UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELANIE E. DAMIAN, as Receiver of Today's Growth Consultant, Inc. (d/b/a The Income Store), <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM COURTRIGHT and COURTRIGHT CONSULTING, INC., <br><br> Defendants. | No. 21 C 1694 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Melanie Damian is the court-appointed receiver in an SEC enforcement action in this district (Case No. 19 C 8454) against a company called Today's Growth Consultant Inc. ("TGC"). R. 1 ¶¶ 1, 7. In accordance with her mandate in the SEC action, the Receiver filed this case against Defendants William Courtright and Courtright Consulting seeking to recoup $2,266,429.15 in payments TGC made to Defendants over a ten-year period. *Id.* ¶¶ 7, 9, 12. Defendants have moved to dismiss for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). R. 26. That motion is denied.

**Legal Standard**

A rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Ass'n.*, 843 F.3d 283, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of

the claim and the basis for it. *Bell. Alt. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

A party alleging fraud or mistake "must state with particularity the circumstances constituting [the] fraud or mistake." Fed. R. Civ. P. 9(b). To meet this particularity requirement, "a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441-442 (7th Cir. 2011) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)). This heightened pleading standard is designed in part to operate "as a screen against spurious fraud claims" and "to minimize the extortionate impact that a baseless claim of fraud can have on a firm or an individual." *Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l*

*Title Ins. Co.*, 412 F.3d 745, 748-749 (7th Cir. 2005). Nevertheless, the particularity requirements of Rule 9(b) "must be read in conjunction with Rule 8, which requires a short and concise pleading." *PharMerica Chicago, Inc. v. Meisels*, 772 F. Supp. 2d 938, 955 (N.D. Ill. 2011) (quoting *Gelco Corp. v. Duval Motor Co.*, No. 02 C 5613, 2002 WL 31875537, at *6 (N.D. Ill. Dec. 26, 2002)). Under Rule 9(b), "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006).

## Background

The Receiver alleges that TGC raised millions of dollars from investors for its advertising and eCommerce business, promising investors minimum guaranteed rates of return ranging from 13 to 20%. R. 1 ¶¶ 19, 21. TGC's websites did not generate revenue to cover these promises. *See id.* ¶ 26. Instead, TGC paid what it owed current investors with money it received from new investments and loans. *Id.* ¶¶ 24, 33. TGC's payments to investors were annually tens of millions of dollars more than the revenue TGC generated in advertising and product sales revenue. *Id.* ¶¶ 23, 31-32. Despite this significant shortfall, TGC continued to represent to investors that it was "solvent" and "debt-free." *Id.* at ¶¶ 22, 41.

Defendant William Courtright ("Courtright") was TGC's Business Development Director, and also provided services to TGC through his company Courtright Consulting. *Id.* ¶¶ 9-10, 12. Courtright's brother was TGC's founder and owner. The Receiver alleges Courtright aided his brother in perpetrating TGC's alleged fraud "by being intimately involved in nearly every operation of [TGC] for an

3

excess of twenty years, including sales and solicitation of investors." *Id.* at ¶¶ 9-10, 24, 87, 93. The Receiver further alleges that Courtright was "regularly aware" of his role in the alleged fraud through his position as Business Development Director. *Id.* at ¶¶ 88, 94.

The Receiver's complaint includes five counts: (I) actual fraud in violation of the Illinois Uniform Fraudulent Transfer Act ("IUFTA"); (II) constructive fraud in violation of the IUFTA; (III) unjust enrichment; (IV) aiding and abetting fraud; and (V) aiding and abetting breach of fiduciary duty.

## Analysis

### I. Counts I and II: Claims under Illinois Uniform Fraudulent Transfer Act (IUFTA)

The Receiver alleges causes of action under both the Illinois Uniform Fraudulent Transfer Act ("IUFTA") actual fraud and constructive fraud provisions. *See Centerpoint Energy Servs., Inc. v. Halim*, 743 F.3d 503, 506 (7th Cir. 2014) (describing the actual and constructive fraud elements of the IUFTA). Both actual and constructive fraud claims are subjected to Rule 9(b)'s heightened pleading requirement. *See DAN v. Joint Venture III, LP v. Touris*, 598 B.R. 430, 447, 442 (N.D. Ill. 2019) (actual fraud); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1079 (7th Cir. 1997) (constructive fraud).[1]

---

[1] Federal bankruptcy law and the IUFTA mirror each other, so courts look to bankruptcy law when applying the IUFTA. See *In re Image Worldwide, Ltd.*, 139 F.3d 574, 577 (7th Cir. 1998).

4

### A. Count I: IUFTA Actual Fraud

The actual fraud provision of the IUFTA governs fraudulent transfers made "with actual intent to hinder, delay or defraud any creditor of the debtor." 740 ILCS 160/5(a)(1).[2] To succeed on an actual fraud claim, Receiver must plead the requisite intent for each transfer she wants to avoid, connecting "the allegations against the Defendants to the Debtor['s] scheme to defraud creditors." *See In re Lancelot Invs. Fund, LP*, 451 B.R. 833, 839 (Bankr. N.D. Ill. 2011). A Ponzi scheme is evidence of such requisite intent. *See id.* at 841 (finding the complaint's actual fraud claim "plausible" and that "[t]he operation of the Ponzi Scheme by the Debtor . . . adequately alleged intent to hinder and to defraud creditors on the part of the Debtors"). The "law presumes that debtors who engage in Ponzi Schemes are insolvent because by definition a Ponzi Scheme inevitably becomes insolvent at some point." *Id.* at 839.

In addition to the alleged operation of a Ponzi scheme, courts consider the factors listed in IUFTA 160/5(b), "known as 'badges of fraud,' . . . to see whether a sufficient number [give] 'rise to an inference of presumption of fraud" to determine intent. *Wachovia Secs. LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 758 (7th Cir. 2012) (citing *Lindholm v. Holtz*, 581 N.E.2d 860, 863 (Ill. 1991); *Steel Co. v. Morgan Marshall Indus., Inc.*, 662 N.E.2d 595, 602 (Ill. 1996)). These badges include whether

---

[2] "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: with actual intent to hinder, delay, or defraud any creditor of the debtor." 740 ILCS 160/5(a)(1); *see also* 740 ILCS 160/2(l) (defining transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing or parting with an asset or an interest in an asset, and includes payment of money").

"the transfer or obligation was to an insider," where "insider" is defined as an "officer of the debtor" or a "relative of a . . . . director, officer, or person in control of the debtor" if the debtor is a corporation; whether "the debtor removed or concealed assets"; whether "the value of consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred"; and whether "the debtor was insolvent or became insolvent shortly after the transfer was made." *See* 740 ILCS 160/5(b); 740 ILCS 160/2(g) (defining insider). Courts isolate each transaction between the debtor and defendant to determine if reasonably equivalent value has been exchanged. *See Barber v. Golden Seed Co.*, 129 F.3d 832, 387 (7th Cir. 1997).

This Court finds *RBS Citizens v. Gammonley* instructive. In that case, the district court refused to dismiss the complaint because it adequately described the parties involved in the case, the property transferred, the exact dates of each transfer, the location of the transfer, and the means of transfer, in addition to several badges of fraud. *RBS Citizens v. Gammonley*, 2013 WL 5753783, at *4-5, (N.D. Ill. Oct. 23, 2013). The district court rejected a motion to dismiss, holding that "at this early stage [of] the litigation, it [was] sufficient for Plaintiff to allege the 'who, what, when, where, and how' of Defendant's fraud, along with facts from which the Court can reasonably infer the Defendants acted with actual intent." *Id.* at *4.

The Court finds that the Receiver has sufficiently met the heightened pleading standard of Rule 9(b) for the actual fraud prong of the IUFTA, pleading the "who, what, where, when, and how." The complaint describes (1) who: Defendant Courtright

and Defendant Consulting, (2) what: transfers of funds to both Defendants totaling $2,266,429.15, (3) where: from a bank in Illinois, (4) when: December 19, 2010, to November 4, 2019, and February 2, 2016, and November 19, 2019, respectively, and (5) how: in general, the Ponzi scheme and Defendant Courtright's role in it. *See* R. 1 at ¶¶ 8-12, 43-44, 46-53.

Additionally, this Court rejects Defendants' argument that the Receiver's actual fraud claim is simply "conclusory." *See* R. 26 at 6. First, the Receiver repeatedly describes and alleges that Defendants participated in a Ponzi scheme, which in and of itself is sufficient to allege actual intent. While Defendants argue that the Receiver does not sufficiently allege that Defendants knew of their role in the Ponzi scheme, knowledge under Rule 9(b) may be alleged generally. *See* R. 26 at 6; R. 31 at 4. Finally, in addition to allegations of a Ponzi scheme, the Receiver has also alleged to several badges of fraud listed in the IUFTA § 5(b).[3] Specifically, Receiver alleges that the transfer was made to an insider, the debtor "removed and/or concealed assets," no reasonably equivalent value was exchanged, and the debtor was insolvent or became insolvent. *See* R. 1 at ¶¶ 49, 63, 68, 64, 41. Therefore, the Court finds Receiver's complaint survives even the heightened standard of Rule 9(b).

Nor is Court convinced by Defendants' argument that the complaint fails to satisfy the "specific transaction" approach by aggregating the amounts of the transfers. *See* R. 26 at 5; R. 31 at 3. Defendants cite *In re First Commercial*

---

[3] *See In re Mack Indus.*, 2020 WL 6589040, at *6-7 (holding the actual fraud claim was plead "just barely" because "[s]ome of [the] allegations could fall within the various badges of fraud").

7

*Management Group* as their primary authority, but that case was decided on summary judgment, rather than at the motion to dismiss stage. *See In re First. Com. Mgmt. Grp. Inc.*, 279 B.R. 230, 232 (Bankr. N.D. Ill. 2002); *see also* R. 26 at 6-7; R. 31 at 3. This Court is more persuaded by *In re Lancelot Investors Fund*, in which the bankruptcy court deciding a motion to dismiss agreed with the use of the specific transaction approach but declined to dismiss the complaint because the case was in a different procedural posture than *In re First Commercial Management Group. See In re Lancelot Invs. Fund*, 451 B.R. at 835, 840. In addition, contrary to Defendants' argument that the Receiver has improperly aggregated the transfers into a single retroactively calculated amount in her complaint, the Exhibits attached to the complaint list the exact date of each transfer, the exact amount of each transfer, the bank and bank account number from which the transfer originated, and the payee of each transfer. *See* R. 26 at 6; R. 1 Exs. A and B. Therefore, the motion to dismiss the IUFTA actual fraud claim is denied.

### B.  Count II: IUFTA Constructive Fraud

Defendants' motion to dismiss the Receiver's claim under the IUFTA constructive fraud prong is also denied.[4]  To succeed on a constructive fraud claim,

---

[4] "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets or the debtor were unreasonably small in relation to the business transaction; or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." 740 ILCS 160/5(a)(2).

the movant "must prove both that the debtor received less than a reasonably equivalent value in exchange for the commission payments and that the debtor was insolvent at the time of the transfers." *See In re First Com. Mgmt. Grp.*, 279 B.R. at 235. Like the IUFTA actual fraud provision, "a transfer lacks reasonably equivalent value if there is no or inadequate consideration." *Creditor's Com. of Jumer's Castle Lodge v. Jumer*, 472 F.3d 943, 947 (7th Cir. 2007). Whether or not something is a reasonably equivalent value is fact specific, and to determine whether reasonably equivalent value has been exchanged courts isolate the transactions between the debtor and the defendant. *Barber*, 129 F.3d at 387. A presumption of constructive fraud arises "where (1) the debtor made a voluntary transfer; (2) at the time of the transfer, the debtor had incurred obligations elsewhere; (3) the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer; and (4) after the transfer, the debtor failed to retain sufficient property to pay the indebtedness." *Gen. Elec. Cap. Corp.*, 128 F.3d at 1079.

The Court finds that the Receiver's complaint satisfies the heightened pleading standard of Rule 9(b) by properly alleging the "who, what, where, when, and how" and sufficiently alleging each element of an IUFTA constructive fraud claim. While Defendants urge that the Receiver's claims are merely recitations of the elements and conclusory statements, the complaint sets forth factual allegations about each Defendant for each element of a presumptive constructive fraud claim. *See* R. 26 at 8, R. 31 at 5. Receiver alleges that (1) the transfers from TGC to Defendants were voluntary, done under the direction of Kenneth Courtright; (2) the debtor, TGC, had

9

other obligations; (3) no reasonably equivalent value was exchanged; and (4) the debtor, TGC, did not retain enough funds to repay its debts. R. 1 at ¶¶ 50, 35, 76-78. Finally, the Court is no more persuaded by Defendants' argument that the transfers are improperly aggregated in the constructive fraud claim than it was under the actual fraud claim. As detailed above, the Exhibits to the complaint sufficiently describe the amount, people and bank involved, and the dates of each transfer. Since this is the motion to dismiss stage, the specific transaction approach is satisfied under the rationale of *In re Lancelot Investors Fund*. For these reasons, the Court denies Defendants' motion to dismiss the IUFTA constructive fraud claim.

### C. "Shotgun" Pleading

Finally, Defendants generally allege that Receiver's complaint for both IUFTA claims are examples of insufficient "shotgun" pleading. *See* R. 26 at 6-7. "Shotgun" pleading is "a pleading style in which each count of the complaint 'incorporates by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged are not material to the claim, or cause of action, appearing in a count's heading.'" *See United States Securities and Exchange Commission v. Winemaster*, 2021 WL 1172773, at *14 (N.D. Ill. March 29, 2021) (quoting *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1001 (N.D. Ill. 2011)). "Shotgun" pleading "make[s] it 'virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" *See Deschepper v. Midwest Wine and Spirits, Inc.*, 84 F. Supp. 3d 767, 783 (N.D. Ill. March 26, 2015) (quoting *CustomGuide*, 813 F. Supp. 2d at 1001). However, a complaint's incorporation by

10

reference of each of the preceding factual allegations does not amount to impermissible "shotgun" pleading, so long as the complaint gives the defendant sufficient notice. *See Winemaster*, 2021 WL 1172773, at *14 (noting that the pleading only becomes insufficient when multiple defendants are grouped together and fails to state which defendant did which fraudulent act).

Contrary to Defendants' arguments, the Receiver's complaint does not amount to "shotgun" pleading. First, as noted in both *Deschepper* and *Winemaster*, incorporation only becomes "shotgun" pleading—and therefore impermissible—when *all* prior paragraphs are incorporated by reference. In the complaint, Receiver only incorporates via reference paragraphs 1 through 56. R. 1 at ¶¶ 57, 73, 80, 85, 90. The complaint does not incorporate all the preceding paragraphs in each cause of action; in fact, several paragraphs are re-alleged for the applicable defendants in each cause of action. Second, Defendants' argument based on *Deschepper* ignores the fact that— even if the complaint did excessively incorporate via reference—such pleading is only insufficient if it fails to put Defendants on notice. While Defendants argue they have no way of sorting out the allegations between them, the Receiver's complaint lays out in each subheading to which Defendant or Defendants that count applies. *See* R. 26 at 6. Finally, the allegations incorporated in paragraphs 1 through 56 are material to each count because they lay out the Ponzi scheme and fraudulent conduct underlying each claim. The Court is therefore not convinced that the Receiver's complaint amounts to impermissible "shotgun" pleading. Accordingly, the motion to dismiss both the IUFTA actual and constructive fraud claims is denied.

11

## II. Count III: Unjust Enrichment

To state a claim for unjust enrichment, the Receiver must show the "defendant [retained] a benefit to the [Receiver's] detriment, and this retention is unjust." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Retention of a benefit is unjust when "(1) the benefit should have been given to the plaintiff but was mistakenly given to the defendant; (2) the defendant procured the benefit through wrongful conduct; or (3) the plaintiff simply has a better claim to the benefit than the defendant." *See Kopecky v. RJM Invs.*, 2009 WL 274615, at *3 (N.D. Ill. Aug. 26, 2009) (finding the defendants were unjustly enriched for retaining profits in an alleged "fraudulent scheme"). "If an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary*, 656 F.3d at 517.

The Court finds that the Receiver sufficiently plead a claim for unjust enrichment under Rule 9(b)'s heightened requirement. Like the IUFTA claims, the Receiver has sufficiently pled the "who, what, where, when, and how." R. 1 at ¶¶ 8-12, 43-44, 46-53. The Receiver has alleged both elements of an Illinois common law unjust enrichment claim in paragraphs 81 through 83 of the complaint. First, the Receiver alleges that "TGC conferred a benefit on the Defendants when it made the Transfers to them." *Id.* at ¶ 81. While Defendants argue that the Receiver insufficiently alleges Defendants' knowledge of unjust enrichment, the Receiver alleged that "Defendants had knowledge of the benefit Defendants received from TGC

12

as a result of the transfers and voluntarily accepted and retained the benefit conferred." *See* R. 31 at 6; R. 1 at ¶ 82. This allegation is sufficient under Rule 9(b) because as explained knowledge may be alleged generally. Second, the Receiver has alleged that the retention of the transferred funds to Defendants was unjust and "inherently unfair" because the funds "are retained by and used to personally benefit Defendants" rather than returning it to TGC to repay creditors. *See* R. 1 at ¶ 83. Finally, as the Court explained in its discussion of the IUFTA claims, the Receiver's "aggregation" of the amounts of the transfers is not improper since the "who, what, where, when, and how" of each of the transfers is sufficiently stated in Exhibits A and B. *See id.* at Ex. A and B. Accordingly, the Court finds the Receiver's unjust enrichment allegations satisfy the heightened pleading standard of Rule 9(b) at the motion to dismiss stage.

### III. Counts IV and V: Aiding and Abetting Fraud and Breach of Fiduciary Duty

"Under Illinois law, to state a claim for aiding and abetting, one must allege (1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant was aware of his role when he provided the assistance, and (3) the defendant knowingly and substantially assisted the violation." *Hefferman*, 467 F.3d at 601 (citing *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 767 (Ill. 2003)). "Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations." *Borsellino*, 477 F.3d at 507.

In *Hefferman*, the Seventh Circuit declined to dismiss a complaint alleging aiding and abetting fraud and aiding and abetting breach of fiduciary duty under

13

Rule 9(b), noting that Rule 9(b)'s heightened pleading requirement was met because the complaint "identif[ied] [] the person making the misrepresentation" and "the time, place, and content of the misrepresentation, and the method [of] the misrepresentation." *Id.* at 598, 601 (quoting *Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)). The Seventh Circuit likewise rejected the claim that the allegations about defendants' knowledge was insufficient, finding the complaint sufficient because it "alleged generally" the defendant's "'condition of mind.'" *Id.* at 601-02.[5]

The Receiver has alleged the "who," naming Defendant Courtright in paragraphs 9 and 87 and in the subheadings of each count; "what," "where," and "when" in paragraphs 43; and "how," in describing the Ponzi scheme and Defendant Courtright's role in it. R. 1 at ¶¶ 9, 43, 87. While Defendants claim that the Receiver does not sufficiently distinguish between Defendant Courtright (against whom these counts are brought) and Defendant Consulting, paragraph 87 of the complaint and the subheadings to Counts IV and V clearly name Defendant Courtright. *See* R. 26 at 11-12; R. 1 at ¶ 87.

Additionally, with respect to aiding and abetting fraud (paragraphs 86-89 of the complaint) and aiding and abetting breach of fiduciary duty (paragraphs 91-94 of the complaint), the Receiver alleges (1) a wrongful act, the Ponzi scheme; (2) that

---

[5] *See also Kroll v. Cozen O'Connor*, 2020 WL 919005, at *6 (N.D. Ill. Feb. 26, 2020) (declining to dismiss an aiding and abetting fraud claim because the Plaintiff "sufficiently pleaded the 'who, what, when, where, and how' of the [] purported fraud"); *Lansing v. Carroll*, F. Supp. 3d 765, 775 (finding the plaintiff "pleaded facts sufficient to infer a knowing assistance" by the defendant in an aiding and abetting breach of fiduciary duty claim because plaintiff pleaded each *Hefferman* element).

"Defendant William Courtright was regularly aware"; and (3) that "Defendant William Courtright knowingly and substantially assisted." *See* R. 1 at ¶¶ 86-88, 91-94. While Defendants assert that the complaint does not sufficiently allege the elements of knowledge and awareness, such elements may be alleged generally even under Rule 9(b). *See* R. 26 at 10. An in any event, the Receiver's allegations about Courtright's job responsibilities are sufficient to plausibly imply that he knew about the fraud. *See* R. 1 at ¶¶ 87, 93-94; R. 31 at 7-8. Accordingly, Defendants' motion to dismiss Counts IV and V is denied.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss [26] is denied.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: July 26, 2021